UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

JANE DOE and JOHN DOE,

        Plaintiffs,

    -against-

LOUIS LEONELLI, COMMUNITY
OF FRANCISCAN FRIARS OF THE
RENEWAL, SAINT ADALBERT'S
CHURCH, SAINT ANTHONY
SHELTER FOR RENEWAL, SAINT
CRISPIN'S FRIARY, and
ARCHDIOCESE OF NEW YORK,

        Defendants.

---------------------------------------------------------------x

No. 22-cv-3732 (CM)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/6/2022

## MEMORANDUM ORDER AND DECISION DENYING PLAINTIFFS' MOTION FOR LEAVE TO PROCEED PSEUDONYMOUSLY

McMahon, J.

Plaintiffs Jane and John Doe are a married Roman Catholic couple who are suing their former priest Louis Leonelli ("Leonelli") and their former parish community, church, shelter, friary and archdiocese (together, "Defendants") for sexual abuse Mrs. Doe suffered at the hands of Leonelli while Mrs. Doe was a parishioner and volunteer worker for the Defendants. Plaintiffs bring two claims for violations of the New York City Victims of Gender-Motivated Violence Act and one common law claim for negligent hiring and supervision.

Plaintiffs have moved for leave to proceed pseudonymously. The Defendants have not yet appeared, and the motion is unopposed.

For the following reasons, Plaintiffs' motion is DENIED.

1

## BACKGROUND[1]

Defendant Leonelli is a Franciscan priest and employee of the Defendants. Defendants supervise and administer charitable projects and programs, including programs run by Leonelli.

Ms. Doe and her husband are French citizens and Roman Catholics who previously lived in New York. While living in New York, Ms. Doe volunteered with Defendants as a "Lay Associate," assisting with their charitable projects run by Leonelli.

Between 2012 and the end of 2015, while Ms. Doe was a volunteer with Defendants, Plaintiffs allege that Leonelli subjected Ms. Doe to ongoing sexual abuse. The sexual abuse alleged included nonconsensual touching and kissing, verbal sexual harassment including explicit sexual comments, and multiple instances of sexual assault where Leonelli grabbed her genitals and penetrated her with his finger.

During the years of abuse, Leonelli threatened to harm Ms. Doe if she reported the abuse. The threats included that she will "need to think of the protection of your family" and that there would be "repercussions to your family and your own reputation" if she reported him.

Eventually, at some unspecified time after 2015, the Does relocated to France with their family, where they still live today.

In 2021, Ms. Doe began to see two psychotherapists within in the Catholic diocese in France and disclosed Leonelli's abuse to the therapists. She then reported Leonelli's misconduct to the Church authorities and reported the misconduct to Leonelli's supervisor. Leonelli's supervisor acknowledged that was happened to Ms. Doe was "dreadful," "terrible," "scandalous" and that he was "sickened by [Leonelli's] behavior!" Leonelli's supervisor apologized and promised to "try to repair the damage and prevent it from happening again."

---

[1] The background facts in this section are taken from Plaintiffs' complaint (Dkt. No. 1, "Compl."), unless indicated otherwise.

2

In May 2022, Plaintiffs filed this complaint, within the seven-year statute of limitations for the New York City Victims of Gender-Motivated Violence Act. *See* NYC Administrative Code § 10-1105; *Engelman v. Rofe*, 194 A.D.3d 26, 28 (1st Dep't 2021).

## DISCUSSION

Rule 10(a) of the Federal Rules of Civil Procedure provides that the "title of [a] complaint must name all the parties." Fed. R. Civ. P. 10(a). "This requirement . . . serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008). A plaintiff's use of a pseudonym in civil litigation "must be balanced against both the public interest in disclosure and any prejudice to the defendant." *Id.* at 189. The Second Circuit has identified the following "non-exhaustive" list of factors that district courts should consider in determining whether a litigant can proceed under a pseudonym:

> (1) whether the litigation involves matters that are 'highly sensitive and [of a] personal nature,' (2) 'whether identification poses a risk of retaliatory physical or mental harm to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties,' (3) whether identification presents other harms and the likely severity of those harms, including whether 'the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity,' (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his [or her] age, (5) whether the suit is challenging the actions of the government or that of private parties, (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court, (7) whether the plaintiff's identity has thus far been kept confidential, (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his [or her] identity, (9) 'whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities,' and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 190 (internal citations omitted). "[T]his factor-driven balancing inquiry requires a district court to exercise its discretion in the course of weighing competing interests." *Id.*

3

The Court considers these factors in turn:

1. Factor 1: Plaintiffs' Claims Are Highly Sensitive and Personal

Many courts "'have granted anonymity to protect against disclosure of a wide range of issues involving matters of the utmost intimacy, including sexual assault.'" *Grottano v. The City of New York*, No. 15 Civ. 9242 (RMB) (KNF), 2016 WL 2604803, at *2 (S.D.N.Y. Mar. 30, 2016) (quoting *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 196 (E.D.N.Y. 2006)). "Allegations of sexual assault are 'paradigmatic example[s]' of highly sensitive and personal claims and thus favor a plaintiff's use of a pseudonym." *Rapp v. Fowler*, 537 F.Supp.3d 521, 528 (S.D.N.Y. 2021) (quoting *Doe No. 2*, 242 F.R.D. at 195 and citing cases). While this factor weighs in Plaintiffs' favor, at the same time, an allegation of sexual assault alone is "not sufficient to entitle a plaintiff to proceed under a pseudonym." *See id.* at 528 (quotation and citation omitted).

2. Factor 2 and Factor 7: Whether Identification Poses a Risk of Retaliatory Harm and Whether Plaintiffs' Identities Have Thus Far Been Kept Confidential

Some courts in this district have found it appropriate to consider factors two and seven together, and the Court agrees it is appropriate here. *See Rapp*, 537 F.Supp.3d at 528.

The second factor considers "retaliatory physical or mental harm" to Plaintiffs or "to innocent non-parties." *Sealed Plaintiff*, 537 F.3d at 190. The seventh factor considers whether plaintiffs' identities have thus far been kept confidential. *Sealed Plaintiff*, 537 F.3d at 190.

For the seventh factor, Plaintiffs' identities have not to date been kept confidential. Plaintiffs admit that they reported the abuse to the Catholic authorities, including Leonelli's supervisor, and Defendants have been in communication with Plaintiffs about the allegations. Plaintiffs do not suggest any promises of confidentiality were made by those authorities in any of those conversations. Without any guarantee of confidentiality from anyone to whom Plaintiffs

4

have already disclosed the abuse, there is no guarantee that proceeding pseudonymously in this court will protect their identity. This factor weighs against proceeding pseudonymously.

Those very same disclosures undercut Plaintiffs' position that proceeding pseudonymously is required to protect them from retaliatory harm. Plaintiffs identify two forms of retaliatory harm that could result from revealing their identities: (1) Defendant Leonelli specifically warned Ms. Doe that she would need to "protect [her] family" if she disclosed the abuse (Dkt. No. 6, ¶5), and (2) Plaintiffs and their children would be subject to "ridicule, revilement, and ostracism" by "third parties" within the Catholic Church who are "angry that the Does choose to sue the Church in a public forum." (Dkt. No. 5, at 6).

The Court is not persuaded that Plaintiffs are at any risk of harm, despite Leonelli's alleged threats. Leonelli's threats were designed to prevent Plaintiff Jane Doe from telling anyone about his abusive behavior. But despite those threats, Ms. Doe reported Leonelli's abuse to the "superior authorities within the Catholic Church" – including Leonelli's supervisor. She does not report any subsequent retaliation, either from Leonelli or from the Franciscan Order or the Roman Catholic Church. (Dkt. No. 6, ¶5). Quite the opposite: Plaintiffs admit that Leonelli's supervisor expressed a profound apology, shock and disgust, and a desire to remedy the wrong.

Plaintiffs also concede that all the Defendants, including Leonelli, already know their identities and that "Defendants . . . have been in contact with Mrs. Doe about these matters . . ." (Dkt. No. 5, at 7). And Ms. Doe explains that, in the years since the abuse, she has since "moved my family safely back to Europe" – away from Leonelli and the other Defendants. (Dkt. No. 6, ¶5). From that position of safety, Leonelli's prior threats of harm carry significantly less weight.

Plaintiffs also claim that revealing their identities will cause "significant turbulence" in the Catholic Church and subject to them to reprisal by unnamed third parties within the Catholic

5

Church, who will be angry at Plaintiffs for reporting the abuse. (Dkt. No. 5, at 6). Plaintiffs allege that would be subject to "humiliation by the Defendants and their powerful network of supporters." (*Id.* at 2).

That priests of the Roman Catholic Church have perpetrated abuse on their parishioners is no secret any longer, and that well-known fact has already caused "significant turbulence" to the Church and in society generally. Dioceses and religious orders have been forced to declare bankruptcy and settle thousands of lawsuits similar to this one for millions of dollars. Plaintiffs do not explain how suing under their actual names would add in any meaningful way to that "turbulence," to use their chosen word.

"Generally speaking, 'the potential for embarrassment or public humiliation does not, without more, justify a request for anonymity.'" *Doe v. Hochul*, No. 21-CV-5067 (AMD) (TAM), 2022 WL 836990, at *7 (E.D.N.Y. Mar. 12, 2022) (quoting *Doe v. Skyline Automobiles Inc.*, 375 F. Supp. 3d 401, 405 (S.D.N.Y. 2019). Indeed, such does "not suffice to overcome the presumption of identification in judicial proceedings, 'absent more direct evidence linking disclosure of [plaintiff's] name to a specific physical or mental injury.'" *Id.* (quoting *Doe v. Gong Xi Fa Cai, Inc.*, No. 19-CV-2678 (RA), 2019 WL 3034793, at *2 (S.D.N.Y. July 10, 2019). Ms. Doe concedes in her declaration that she "cannot say precisely what . . . retaliation would look like . . ." and fails to identify any direct evidence linking disclosure to any specific physical or mental injury. (*See* Dkt. No. 6, ¶7). Ms. Doe likewise does not explain how proceeding pseudonymously will protect her from that humiliation by the Defendants and their "network," where the Defendants already know who they are and have made no promises to keep that information confidential. While "the Court appreciates the potential harm from being subjected to intense public scrutiny," *see Doe*,

6

2022 WL 836990, at *7, without more, the Court cannot find this risk alone weighs in favor of proceeding pseudonymously.

3. Factor 3: Other Harms

The third factor concerns potential "other harms" to Plaintiffs "and the likely severity of those harms." *Sealed Plaintiff*, 537 F.3d at 190. Plaintiffs state in their brief that factor three is "not relevant or not persuasive" in this case. (Dkt. No. 5, at 4 n.1). The Court thus considers it conceded that there are no other harms to consider. The absence of any other potential harms weighs against proceeding pseudonymously.

4. Factor 4: Plaintiffs' Vulnerability

Age is the "critical factor" in determining vulnerability. *Rapp*, 537 F.Supp.3d at 530. "If a plaintiff is not a child, this factor weighs against a finding for anonymity." *Id.* (quotation and citation omitted). Where the plaintiff "is an adult . . . who has chosen to level serious charges against a defendant in the public eye . . . This factor weighs in favor of [the Plaintiff] shouldering the burden of such accusations." *Id.* Here, Plaintiffs are both adults who have chosen to level these accusations against the Defendants; moreover, the alleged abuse did not occur when Ms. Doe was a child. This factor weighs against proceeding pseudonymously.

5. Factors 5, 8 and 9: The Public Interest in Open Court Proceedings

Factors five, eight, and nine all relate to the public's interest in knowing the Plaintiffs' identity and all weigh against proceeding pseudonymously.

The fifth factor considers whether the suit concerns the actions of the government or a private party. "In private civil suits, courts recognize there is a significant interest in open judicial proceedings since such suits 'do not only advance the parties' private interests, but also further the public's interest in enforcing legal and social norms.'" *Rapp*, 537 F.Supp.3d at 532 (quoting *Doe*

*v. Weinstein*, 484 F. Supp. 3d 90, 97-98 (S.D.N.Y. 2020)). Here, Plaintiffs challenge the actions of private parties; thus, there is a significant interest in open judicial proceedings weighing against the use of pseudonym.

"The ninth factor looks to whether, because of the purely legal nature of the issues presented, there is an atypically weak public interest in knowing the litigants' identities." *Id.* Where, as here, the "allegations are decidedly factual in nature," *see id.*, the public's interest is not "atypically weak" but strong. This factor also weighs against the use of a pseudonym.

The eighth factor weighs whether the public's interest in the litigation is furthered by revelation of the plaintiff's identity. As explained above, the public has a significant interest in open judicial proceedings and the public's interest in the litigation is furthered by transparency, including exposure of the parties' identities. Here, Plaintiffs claim that the public's interest is furthered by anonymity because there is a public interest in protecting those who make sexual assault allegations so that victims are not deterred from reporting those crimes. In support, Ms. Doe remarks that it is only "with the hope that my anonymity will be maintained that I have found the strength to come forward at all." (Dkt. No. 6, ¶8).

In *Rapp*, the Plaintiff made these same arguments, but to no avail. There, my colleague Judge Kaplan stated that while "the public generally has an interest in protecting those who make sexual assault allegations so that they are not deterred from vindicating their rights, it does not follow that the public has an interest in maintaining the anonymity of every person who alleges sexual assault or other misconduct of a highly personal nature." *Rapp*, 537 F.Supp.3d at 533. He further noted that, "It would be inappropriate at this juncture for the Court to play any role in deciding whether [the plaintiff] persists in his claims . . . which of course would be his right regardless of the outcome of this motion." *Id.* at 532. Rather, "The Court's role" on this factor "is

to weigh [plaintiff's] privacy interest against . . . the public's interest in open judicial proceedings." *Id.* at 532-533. Judge Kaplan ultimately found on the balance that the plaintiff's privacy interests as a sexual assault survivor who had chosen to level serious claims against the defendant in a public forum did not outweigh the public's interest in open judicial proceedings.

So too here. The Court's only role in assessing this factor is to weigh the public's significant interest in open judicial proceedings against the Plaintiffs' countervailing privacy interests. Striking that balance, the Court finds that this factor weighs against proceeding anonymously.

6. Factor 6: Prejudice to Defendants

This factor also weighs against proceeding pseudonymously.

Courts have considered at least three types of prejudice to defendants in proceeding anonymously: difficulties in conducting discovery, reputational damage, and fundamental fairness. *Rapp*, 537 F.Supp.3d at 531. Defendants here face all three.

Difficulties in conducting discovery include an "asymmetry in fact-gathering" that cannot "be avoided by the fact that [plaintiff] already has provided [defendant] with his name." *Id.* Where a case involves potential publicity, asymmetry as to information and witnesses can occur because – with one party anonymous – "information about only one side may . . . come to light" as a result. *Id.* This asymmetry "hinder[s] 'the judicial interest in accurate fact-finding and fair adjudication.'" *Id.* (quoting *Weinstein*, 484 F.Supp.3d at 97-98).

Plaintiffs argue here that because Defendants know their identity, Defendants will not be prejudiced. However, Plaintiffs do not account for the prejudice suffered by the asymmetry of information that may occur in this case; for example, potentially unknown witnesses may not otherwise come forward if "they do not know who this accuser is"; "they likely would have no

9

way of knowing that their information would be pertinent." *See id.* Simply providing Defendants with Plaintiffs' identities will not remedy this asymmetry.

As to reputational damage, "'Information and allegations that are highly sensitive and of a personal nature can flow both ways.'" *Id.* (quoting *Skyline Automobiles Inc.*, 375 F. Supp. 3d at 407). "In other words, [plaintiff's] 'allegations and public comments embarrass [defendant] and place him under the same stigma that concerns [plaintiff].'" *Id.* (quoting *Anonymous v. Simon*, No. 13-cv-2927, 2014 WL 819122, at *2 (S.D.N.Y. March 3, 2014)). If Plaintiffs proceed anonymously, it is more difficult for Defendants to mitigate against the reputational damage associated with the lawsuit.

Finally, "fundamental fairness suggests that defendants are prejudiced when 'required to defend [themselves] publicly before a jury while plaintiff[s] . . . make . . . accusations from behind a cloak of anonymity.'" *Id.* at 531-532 (quoting *Doe v. Delta Airlines. Inc.*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015)). A plaintiff who makes serious changes "put[s] his credibility in issue" and "Fairness requires that [plaintiff] be prepared to stand behind [the] charges publicly.'" *Id.* at 532.

The prejudice factor weighs against proceeding anonymously.

7. <u>Factor 10: Alternative Mechanisms for Protecting Confidentiality</u>

Plaintiffs can certainly "seek less drastic remedies than blanket anonymity, such as redactions to protect particularly sensitive information, or a protective order." *Rapp*, 537 F.Supp.3d at 533 (quotation and citation omitted). As there are alternative mechanisms for protecting confidentiality, this factor weighs against proceeding pseudonymously.

In sum, balancing all the foregoing factors, the weight tips against proceeding pseudonymously.

10

## CONCLUSION

For the reasons discussed above, Plaintiffs' motion is DENIED.

This constitutes the decision and order of the Court. It is a written opinion.

The Clerk of Court is respectfully directed to terminate the motion at Docket Number 2.

Dated: June 6, 2022

*[signature]*

U.S.D.J.

BY ECF TO ALL COUNSEL